UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARTON ALLEN #230195,

       Plaintiff,

v.

ROBERT TINERELLA, *et al.,*

       Defendants.

NO. 1:26-cv-1283

HON. ROBERT J. JONKER

MAGISTRATE JUDGE RAY KENT

_____

Ian T. Cross (P83367)
Attorney for Plaintiff Allen
402 West Liberty Street
Ann Arbor, MI  48103
(734)-994-9590
ian@lawinannarbor.com

Matthew T. Tompkins (P62665)
Attorney for Def. Tinerella
Straub Seaman & Allen PC
2810 E. Beltline Lane NE
Grand Rapids, MI 49525
(616) 530-6555
mtompkins@lawssa.com

Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defs. Bagley,
Lemke, Wickwire & Wyman
Michigan Dept. of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-3055
hoj@michigan.gov

_____/

**MDOC DEFENDANTS BAGLEY, LEMKE, WICKWIRE & WYMAN'S BRIEF
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defendants
Michigan Dep't of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055

Dated:  July 8, 2026

# TABLE OF CONTENTS

Page

Table of Contents ........................................................................................ i

Concise Statement of Issues Presented ........................................................ ii

Controlling or Most Appropriate Authority ................................................. iii

Statement of Facts ..................................................................................... 1

Standard of Review .................................................................................... 2

Argument ................................................................................................... 3

I.    The Court should dismiss the MDOC Defendants from this lawsuit
      because Allen's claims against them are unexhausted. .................................. 3

      A.    A prisoner must properly exhaust all administrative remedies
            before bringing an action challenging prison conditions. ...................... 3

      B.    To exhaust claims under MDOC's grievance process, a grievant
            must obtain a merits-based decision through each step of the
            three-step grievance process. ............................................................. 4

      C.    Allen did not exhaust any claims against the MDOC
            Defendants. ....................................................................................... 7

Conclusion and Relief Requested ................................................................ 10

# CONCISE STATEMENT OF ISSUES PRESENTED

1. 42 U.S.C. § 1997(e)(a) requires a prisoner-plaintiff to properly exhaust administrative remedies against all defendants prior to filing a suit under 42 U.S.C. § 1983.  Allen did not exhaust any claims against the MDOC Defendants.  Should this Court grant the MDOC Defendants summary judgment, dismiss the claims as they are unexhausted, and dismiss them from this lawsuit?

   Plaintiff's Answer:                     "No"

   MDOC Defendants' Answer:          "Yes"

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

1. Exhaustion:

*Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the [Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e,] makes exhaustion a *precondition* to filing an action in federal court.") (emphasis added).

   a. Proper Exhaustion is Required.

   *Woodford v. Ngo*, 548 U.S. 81, 90, 92 (2006) (holding that the PLRA requires "proper exhaustion of administrative remedies," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)").

   *Jones v. Bock*, 549 U.S. 199, 204 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

   b. Exhaustion Limited to the Issues Raised and the Individuals Identified in a Grievance

   *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance.").

   *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019) (holding that, when a grievance names or identifies specific individuals at Step I, exhaustion is limited to those specific individuals).

   *Hall v. Warren*, 443 Fed. App'x 99, 106 (6th Cir. 2011) (finding that a grievance requesting transfer did not exhaust a denial-of-medical-care claim).

**STATEMENT OF FACTS**

Plaintiff Barton Allen, a prisoner under the custody of the Michigan Department of Corrections (MDOC), brings claims arising out of his incarceration at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan. (ECF No. 1.) The claims arose out of events that allegedly occurred on January 13, 2025, and Allen names as defendants Corrections Officer (CO) Heather Bagley, Prison Counselor (PC) Marcus Lemke, PC Bobbie Wickwire, and CO Jonathan Wyman[1] (together, MDOC Defendants); and CO Robert Tinerella. (*Id.*) Specifically, Allen alleges CO Tinerella subjected Allen to excessive force during an incident in the dayroom and the MDOC Defendants, although present, failed to intervene to protect Allen. (*Id.* ¶¶ 10–28, PageID.2–4.) Allen asserts Eighth Amendment failure-to-protect and (state law) intentional-infliction-of-emotional-distress claims against the MDOC Defendants. (*Id.* ¶¶ 34–39 & 44–47, PageID.5–6.) Allen filed this complaint on April 20, 2026. (*Id.*)

MDOC Policy Directive (PD) 03.02.130, "Prisoner/Parolee Grievances" (eff. date Oct. 21, 2024) (Ex. 1), sets forth the three-step process for prisoners to address most of the issues that may arise during their incarceration. To exhaust administrative remedies under this policy, a grievant must attempt to reconcile the issue before filing a grievance, then must pursue that grievance through Step III while adhering to the policy's requirements. (*Id.*) A prisoner's Step III Grievance Report tracks all the grievances that had been filed at Step III. (Ex. 2, Allen's Step

---

[1] CO Wyman is listed in the complaint as "Unidentified Officer 1." (ECF No. 1 ¶ 9, PageID.2.)

III Grievance Report.)  Allen's Step III Grievance Report shows that, before he filed the complaint, he had pursued one Step III grievance arising out of IBC:

| Grv. No.[2] (Ex. 2 Pg.) | MDOC Def(s) grieved at Step I | Issue(s) grieved at Step I | Grievance Outcome |
|---|---|---|---|
| IBC-25-01-0131-26a (4–9) | None | On 1-13-25, CO Tinerella assaulted Allen. | Step I: denied  Step II: denied[3]  Step III: denied |

**STANDARD OF REVIEW**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In deciding a summary judgment motion, this Court draws all justifiable inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In considering whether summary judgment is appropriate, this Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial."  *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir. 2000).

---

[2] The grievance number consists of the facility code, the year and month of filing, a sequential filing number reflecting the grievance's filing order at that facility for the calendar year, and the grievance category code.  The grievance number is abbreviated using the facility code and the filing number.

[3] The Step II response, which was not included in Allen's Step III submission, is included as Exhibit 3.

ARGUMENT

**I.** **The Court should dismiss the MDOC Defendants from this lawsuit because Allen's claims against them are unexhausted.**

    **A.** **A prisoner must properly exhaust all administrative remedies before bringing an action challenging prison conditions.**

Congress passed the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, in part to "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," and "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). To achieve this end, the PLRA instituted the exhaustion requirement, which "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," and creates an administrative record for the court and the parties to assess the merits of the prisoner's claims. *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Thus, under the PLRA, a prisoner cannot bring a civil rights action with respect to prison conditions under federal law if the prisoner did not first exhaust all available administrative remedies. *Porter*, 534 U.S. at 524 ("[E]xhaustion is a *prerequisite* to suit.") (emphasis added); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("The plain language of the [PLRA] makes exhaustion a *precondition* to filing an action in federal court.") (emphasis added). In other words, exhaustion is an issue that must be determined before parties can present the merits of the lawsuit to a court.

The PLRA requires "proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the

3

agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (internal quotations and citation omitted). Requiring proper exhaustion offers prisoners a powerful incentive to make full use of the prison grievance process and provides prisons with a fair opportunity to correct their own errors. *Woodford*, 548 U.S. at 94. This means "prisoners must complete the administrative review process in accordance with the applicable procedural rules— rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal quotation and citation omitted).

An untimely or otherwise improperly filed grievance—even if appealed through all steps of a grievance process—does not satisfy the PLRA's exhaustion requirement because allowing improper exhaustion "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford*, 548 U.S. at 97. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 219.Thus, before filing suit, a plaintiff must properly exhaust all administrative remedies by seeking review of the complaint allegations under the applicable prison complaint or grievance process.

**B.      To exhaust claims under MDOC's grievance process, a grievant must obtain a merits-based decision through each step of the three-step grievance process.**

The MDOC uses a three-step grievance process, set forth in PD 03.02.130 (Ex. 1), to address the vast majority of a prisoner's claims. Under ¶ C, "[c]omplaints filed

by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy." (*Id.* at 1.) Under ¶ Z, "[g]rievances and grievance appeals at all steps" are to be "date stamped upon receipt" and "considered filed on the date received by the Department." (*Id.* at 5.)

Before filing a Step I grievance, ¶ W requires the prisoner to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue." (*Id.* at 4.) Then, under ¶ CC, within five business days after the attempt to resolve, the grievant must complete and file a Step I grievance using the Prisoner/Parolee Grievance form (CJS 247A). (*Id.* at 5.) Under ¶ DD, a unique identifier is assigned to each Step I grievance received by the grievance office. (*Id.*) Under ¶ FF, a Step I response must be issued within 15 business days, unless an extension is granted. (*Id.* at 6.)

A grievant dissatisfied with the Step I response or who did not receive a timely Step I response can appeal to Step II under ¶ JJ. (*Id.* at 6.) To do so, the grievant must first request a Prisoner/Parolee Appeal form (CSJ-247B) from the Step I grievance coordinator and complete the Step II portion of the form. (*Id.*) The grievant must then submit the completed form to the Step II grievance coordinator within ten business days after the Step I response receipt date, or the Step I response due date if a Step I response had not been received. (*Id.*) Under ¶ KK, a Step II response must be issued within 15 business days unless an extension is granted. (*Id.* at 6–7.)

5

A grievant dissatisfied with the Step II response or who did not receive a timely Step II response can appeal to Step III under ¶ NN. (*Id.* at 7.) To do so, the grievant must first complete the Step III portion of the same form (CSJ-247B) used for the Step II appeal. (*Id.*) The grievant must then submit the completed form to the Grievance Section of the MDOC Bureau of Legal Affairs (BOLA) within ten business days after the Step II response receipt date, or the Step II response due date if a Step II response had not been received. (*Id.*) Under ¶ OO, Step III responses are generally issued within 60 business days. (*Id.*)

Under ¶¶ DD and KK, each MDOC facility maintains a database tracking every Step I grievance or Step II appeal received at that facility. (*Id.* at 5–7.) Similarly, under ¶ OO, the BOLA Grievance Section maintains a database tracking every Step III appeal received by that office. (*Id.* at 7.) As ¶¶ DD, KK, and OO require the grievances or grievance appeals received at each step be logged and reviewed, a grievance coordinator does not have any discretion as to whether to process a received grievance or grievance appeal. (*Id.* at 5–7.)

Grievances and grievance appeals that do not follow the procedural requirements of the grievance process are subject to rejection under ¶¶ EE, KK, and NN. (*Id.* at 5–7.) Reasons for rejection include untimeliness and non-grievable subject matter, and are generally set forth in ¶ P. (*Id.* at 2–3.) Under ¶ O, a grievant who disagrees with a rejection cannot file a new grievance to contest the rejection but must appeal the rejection to the next step in accordance with the policy. (*Id.* at 2.) Additionally, "[g]rievances categorized as non-grievable must be appealed pursuant to this policy through all three steps of this grievance process in

6

order to exhaust administrative remedies since the non-grievable designation may be overturned at Step II or Step III." (*Id.*)

### C. Allen did not exhaust any claims against the MDOC Defendants.

The Court should dismiss the unexhausted claims against the MDOC Defendants and dismiss them from this lawsuit. Undeniably, Allen needed to exhaust all available remedies before filing this lawsuit. *Nussle,* 534 U.S. at 523. The exhaustion requirement of the PLRA "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. This means Allen needed to exhaust his claims under MDOC's three-step grievance process: file Step I grievances naming or identifying each MDOC Defendant and raising—as issues being grieved—every claim against them; pursue those grievances through Step III; and follow all filing and procedural rules set forth in PD 03.02.130 to obtain a decision on the merits at each step of each grievance. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("Under the [MDOC's] procedural rules, inmates must include the 'dates, times, places and names of all those involved in the issue being grieved' *in their initial grievance*.") (emphasis added).

Relatedly, when a grievance names or identifies specific individuals at Step I, exhaustion is limited to those specific individuals. *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *3 (6th Cir. Apr. 23, 2019); *see also Hall v. Cole*, No. 2:23-cv-28, 2024 WL 4884613, at *4 (W.D. Mich. Oct. 25, 2024) ("However, where a prisoner names specific individuals at Step I of the grievance process, prison

7

officials would naturally assume that the prisoner complied with exhaustion requirements for those named at Step I. Thus, when specific individuals are named at Step I, exhaustion is limited to the named individuals." (citing *Brown*, 2019 WL 5436159, at *3)), *adopted,* 2024 WL 4880598 (W.D. Mich. Nov. 25, 2024).

Additionally, a generalized grievance cannot exhaust a specific claim—the grievant must pursue a grievance on each claim and incident alleged in the complaint. *See Hall v. Warren*, 443 Fed. App'x 99, 106 (6th Cir. 2011) (dismissing denial-of-medical-care claim against prison doctor where prisoner's underlying "grievance [was] exclusively concerned with the need for a transfer to a tobacco-free unit"); *Ward v. Luckey*, No. 12-cv-14875, 2013 WL 5595350, at *2 (E.D. Mich. Oct. 10, 2013) ("It is not enough for [the prisoner] to show only that an underlying grievance was filed; he must show that he exhausted his administrative remedies with respect to the *retaliation* claim." (emphasis in original)).

Here, Allen did not exhaust any claims against the MDOC Defendants before filing this lawsuit. Allen's grievance records show he filed one Step III grievance arising out of IBC—i.e., IBC-131. To the extent Allen attempted to exhaust his claims with IBC-131, the scope of potential exhaustion is limited to the specific claims asserted at Step I against the individuals named or identified at Step I. *Vandiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). But although IBC-131 concerned the allegations Allen makes in the complaint, he cannot rely on this grievance to exhaust any claims against the MDOC Defendants.

8

As a threshold matter, the only individual Allen named in IBC-131 at Step I was CO Tinerella, and the only misconduct Allen alleged in IBC-131 was CO Tinerella's alleged assault on Allen, which means the only claims addressed by the grievance were his claims against CO Tinerella. (Ex. 2 at 7.) As Allen did not name any of the MDOC Defendants at Step I, Allen failed to identify them as the subjects of the grievance. (*Id.*) Although IBC-131 concluded, "This is on All the C.O. that was there And the RUM and counselor" (all errors in original), the grievance did not explain how these other individuals did anything wrong, so there is no basis to process the grievance against anyone other than CO Tinerella. (*Id.*) Thus, the MDOC considered IBC-131 to be a grievance against CO Tinerella only and addressed it as such at Step I. (*Id.* at 8.) As the MDOC Defendants were not the proper subjects of IBC-131, Allen cannot rely on this grievance to exhaust any claims against the MDOC Defendants. As IBC-131 was the only grievance Allen appealed through Step III, he failed to exhaust any claims against the MDOC Defendants under the grievance process.

The PLRA requires proper exhaustion, which means the prisoner must complete every step of the administrative process while "compl[ying] with the system's critical procedural rules." *Woodford*, 548 U.S. at 90 & 95. "[F]iling an untimely or otherwise procedurally defective administrative grievance or appeal" fails to "satisfy" the PLRA's exhaustion requirement and such "noncompliance carries [the] sanction" of dismissal. *Id.* at 88 & 95. Thus, Allen needed to exhaust his claims by presenting these claims through the appropriate administrative process and following the procedure set forth by the MDOC to proceed with the

instant lawsuit.  But, as discussed above, Allen did not exhaust any claims against the MDOC Defendants.  As the PLRA forbids Allen from proceeding with his unexhausted claims in this lawsuit, these claims must be dismissed.  *Id.* at 102. This Court should therefore dismiss the claims against the MDOC Defendants and dismiss them from this lawsuit.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, the Court should enter an order to grant the MDOC Defendants summary judgment, dismiss the claims against them as unexhausted, and dismiss them from this lawsuit.

Respectfully submitted,

*/s/ Joseph Y. Ho*
Joseph Y. Ho (P77390)
Assistant Attorney General
Michigan Dept. of Attorney General
Attorney for MDOC Defs. Bagley,
Lemke, Wickwire & Wyman
Corrections Division
P.O. Box 30217
Lansing, MI 48909
(517) 335-3055
hoj@michigan.gov

Dated:  July 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2026, I electronically filed the above document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Joseph Y. Ho*
Joseph Y. Ho (P77390)
Assistant Attorney General
Attorney for MDOC Defs. Bagley,
Lemke, Wickwire & Wyman
