**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

Barton Allen,

Plaintiff, Case No. 1:26-cv-1283
v. Hon. Robert J. Jonker

C.O. Robert Tinerella, et. al., Magistrate Judge Ray Kent

Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS BAGLEY, WICKWIRE, LEMKE, AND WYMAN'S MOTION FOR SUMMARY JUDGMENT**

## STATEMENT OF FACTS

This case concerns a gratuitous, unprovoked beating of a Michigan prisoner, Barton Allen, by MDOC Corrections Officer Robert Tinerella in the presence of at least four other MDOC employees. ECF No. 1, PageID.3-4, ¶¶ 19-23. While the other Defendants stood by, C.O. Tinerella repeatedly punched Mr. Allen in the face with force sufficient to break Mr. Allen's cheekbone. ECF No. 1, PageID.4, ¶¶ 24-27. Mr. Allen underwent reconstructive surgery as a result of his injuries. ECF No. 1, PageID.4, ¶ 28.

The attack occurred on January 13, 2025. Mr. Allen filed a Step I Grievance

concerning the incident on the following day, January 14, 2025. ECF No. 18-3, PageID.59. Mr. Allen's Step I Grievance read, in its entirety:

> to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. Assault and Battery
> C.O. Tinerella Assault me while coming out of A-Wing Eating Area. I got Suger off the Prisoner food desk, I Was infrom by the Counsler to get the Suger. C.O. Tinerella told me to put My Suger back. I told him, the counsler told us that we can get the Suger. Then, I tried to walk around him. C.O. Tinerella Called me pussy, Hoe's and Bitch's to get me to do Something to him. I Just tried to wolk Around him And then that's when C.O. Tinerella Assault Me. This is on All the C.O. that was there And the ARum and counsler. "Save Video" Mr. Preston Allen
> Grievant's Signature

The copy of Mr. Allen's Step II Grievance produced by Defendants is too low-quality of a reproduction to definitively discern its contents, but it appears to contain the phrases, "C.O. Tinerella broke a bone in my face," "C.O. help him," and "all of them":

> **STEP II** – Reason for Appeal C.O. Tinerella broke a bone in my face and the other C.O. Help him, the Counsler All of them.

The contents of Mr. Allen's Step III Grievance Appeal are more legible in the photocopy provided by Defendants. In his Step III Grievance Appeal, Mr. Allen clearly identified Defendants Bagley, Lemke, and Wickwire by name, while also identifying

"other C.O. that are on the Critical Incident Reports":

**STEP III — Reason for Appeal** Violation of PD-04.05.120 COD/Ethics/Conduct of Employees. PD.02.03.107 Regarding Inhamand treatment PD.03.03.130 Resulting in Serious Physical injuries upon conscious intention as Retatiation by Staff Submitted for final exhousation. PC. Wickwire PC. Lemke, CO Timmerella, And CO. Bagley And other co. that are on the critical incident Reports.
"Look At video. "Keep Video" for my Complaint.

Defendants concede that Mr. Allen pursued this grievance through all three steps of the MDOC Grievance Procedure, and that the MDOC responded to Mr. Allen's grievance on the merits at every step. ECF No. 18-3, PageID.52-55. Defendants Bagley, Wickwire, Lemke, and Wyman nevertheless moved for summary judgment on their affirmative defense of failure-to-exhaust available administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). These Defendants argue that Mr. Allen failed to exhaust available administrative remedies prior to filing suit, because his Step I grievance allegedly failed to comply with subparagraph Y of the MDOC Prisoner and Parolee Grievance Policy Directive. Subparagraph Y reads, in its entirety:

**Y.** A grievant shall use a Prisoner/Parolee Grievance Form (CSJ-247A) to file a Step I grievance. A Prisoner/Parolee Grievance Appeal (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter; however, handwriting must be legible. The issue should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included. Information should be confined to the form and not written on the back, sides, or margins of the form, or in the response area. Additional

> pages may be attached to the grievance form if necessary to provide required information; however, grievants are encouraged to limit the information to the grievance form itself. If the grievant believes additional pages are necessary, they are to submit four copies of each additional page; Departmental forms are not to be used for this purpose. The grievant may use an intradepartmental mail run, if available, to send a grievance to another facility, or to send a Step III grievance, to the Grievance Section. If an intradepartmental mail run is not available and the grievant does not have sufficient funds to mail the grievance, postage shall be loaned as set forth in PD 05.03.118 "Prisoner Mail."

ECF No. 18-2, PageID.47-48.

## STANDARD OF REVIEW

Failure to exhaust available administrative remedies "is an affirmative defense under the PLRA," which Defendants bear the burden to plead and prove. *Jones v. Brock*, 549 U.S. 199, 216 (2007); *see also, Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007). While a party who moves for summary judgment without the burden of proof need only show that his opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). "Where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986). Summary judgment in favor of a party with the burden of proof on an issue "is inappropriate when the evidence is susceptible of different interpretations or

inferences by the trier of fact." *Hunt v. Cromartie,* 526 U.S. 541, 553 (1999). In other words, a defendant moving for summary judgment on an affirmative defense, as is the case here, "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett,* 281 F.3d at 561.

## ARGUMENT

### I. Prisoners can exhaust the MDOC grievance procedure without identifying a particular defendant by name, as long as the grievance gave the MDOC sufficient information to identify the individuals involved

Defendants Bagley, Wickwire, Lemke, and Wyman argue that no reasonable trier of fact could find that Plaintiff exhausted the prison's available administrative remedies prior to filing suit against them, because Plaintiff allegedly violated subparagraph Y of the MDOC Grievance procedure. (ECF No. 18-2, PageID.47). Specifically, Defendants Bagley, Wickwire, Lemke, and Wyman argue that Plaintiff's claims against them fail because Plaintiff identified them in his Step I grievance with the sentence: "this is on all the C.O. that was there and the RUM and Counsler," rather than listing each MDOC employee who was present during the attack by name.

Federal courts in Michigan have repeatedly rejected this argument. *See, e.g. Herman v. Hawkins,* No. 25-10924, 2026 LEXIS 188652 at *6-*7 (E.D. Mich. Feb. 5, 2026) ("Defendants argue that the relevant grievance about the incident cannot

exhaust Herman's claim against Hawkins because he is not named in it. The Court disagrees. . . . MDOC had fair notice that Hawkins was the "staff member" mentioned in Herman's Step I grievance.”) (*report and recommendation adopted*, No. 2:25-CV-10924, 2026 U.S. Dist. LEXIS 42232 (E.D. Mich. Mar. 2, 2026)); *Gardiner v. Corizon Health, Inc.*, No. 2:21-cv-167, 2023 U.S. Dist. LEXIS 20557 at *4 (W.D. Mich. Feb. 7, 2023) (“Federal district courts in Michigan have found that where the facts in the grievance give the MDOC sufficient information to identify the individual or individuals involved, the prisoner fulfills the purposes of exhaustion even though he or she failed to identify the official by name.”); *Freeman v. Holmes*, No. 1:19-cv-728, 2020 U.S. Dist. LEXIS 128066 at *18-*19 (W.D. Mich. June 24, 2020) (same); *Sedore v. Greiner*, No. 19-10311, 2020 LEXIS 89223 at *22 (E.D. Mich. Sep. 21, 2020) (“Notwithstanding the mandate that the prisoner name all those involved in the complained-of incident, failure to name can be excused if it is obvious from the facts alleged in the grievance that the defendants were involved and the prison had the opportunity to address the claims. And, identifying a subject of the grievance by title, rather than by name, can be adequate to give the prison officials notice of the claim.”) (internal citations omitted); *Stevenson v. MDOC*, No. 1:07-CV-213, 2008 U.S. Dist. LEXIS 16459 at *3-*4 (W.D. Mich. Mar. 4, 2008) (“Defendants are correct that Plaintiff failed to specifically name each individual

Defendant in his grievance, but they overstate the significance of that failure. Plaintiff did not specifically name every Defendant, but he did generally identify each Defendant and thereby provided sufficient information to properly exhaust his claim against all Defendants.") (Jonker, J.).

A grievance suffices to exhaust administrative remedies against a defendant who is identified in the grievance via a description, rather than by name,[1] because "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued . . . the grievance is not a summons and complaint that initiates adversarial litigation." *Jones v. Bock,* 549 U.S. 199, 219 (2007) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Thus, "a grievance will fulfill the purposes of exhaustion and give the defendant fair notice so long as it provides sufficient information to allow prison officials to identify the person being grieved." *Freeman v. Holmes*, No. 1:19-cv-728,

---

[1]This is true regardless of whether other potential defendants are identified by name in the grievance. *See, e.g. Herman v. Hawkins,* No. 25-10924, 2026 LEXIS 188652 at *6-*7 (E.D. Mich. Feb. 5, 2026) (finding grievance exhausted prisoners' claim against an individual described in grievance as a "staff member," where other MDOC defendants were identified by name) (*R&R adopted*, No. 2:25-CV-10924, 2026 U.S. Dist. LEXIS 42232 (E.D. Mich. Mar. 2, 2026)); *Freeman v. Holmes*, No. 1:19-cv-728, 2020 U.S. Dist. LEXIS 128066 at *18-*19 (W.D. Mich. June 24, 2020) (grievance exhausted claim against both named and unnamed defendants, where unnamed defendants were described sufficiently for MDOC to identify them) (*R&R adopted,* No. 1:19-cv-728, 2020 U.S. Dist. LEXIS 127694 (W.D. Mich. July 21, 2020)).

2020 U.S. Dist. LEXIS 128066 at *18-*19 (W.D. Mich. June 24, 2020) (*report and recommendation adopted*, No. 1:19-cv-728, 2020 U.S. Dist. LEXIS 127694 (W.D. Mich. July 21, 2020)).

Defendants Lemke, Wickwire, Bagley, and Wyman have not met their burden of proving that Mr. Allen's grievances could not have provided prison officials with sufficient information to identify them as persons being grieved. They have not proven that no reasonable jury could find that Mr. Allen's statement, "this is on all the C.O. that was there and the RUM and Counsler," along with his request in his Step I Grievance to "save video," was insufficient to enable prison officials to identify the staff members present during the attack by viewing prison surveillance video of the incident.

Any claim to the contrary is belied by the fact that prison officials have been able to identify C.O Jonathan Wyman as a Defendant in this case, *See* ECF No. 17, PageID.26, despite the fact that he was never identified by name in Plaintiff's grievances, was sued under the pseudonym "Unidentified Officer 1," and was described in the Complaint only as a corrections officer who was present during the beating and failed to intervene. *See* ECF No. 1, PageID.4, ¶¶ 23-24. If prison officials were capable of identifying C.O. Wyman as "Unidentified Officer 1" from only the cursory description provided in Plaintiff's Complaint, a reasonable jury could easily

conclude that they were capable of identifying Defendants Wyman, Lemke, Wickwire, and Bagley from the information provided in Mr. Allen's grievances.

**II. The MDOC's policy does not require prisoners to name every involved individual in the Step I grievance, or to name individuals whose names are unknown to the prisoner.**

On its face, "the MDOC's policy regarding grievances does not clearly require prisoners to name all relevant prison officials in the Step I grievance, rather than at some point in the grievance process." *Payne v. Alviar*, 2024 U.S. Dist. LEXIS 54725 at *12 (W.D. Mich. March 27, 2024); *see also, Coleman v. Rich*, No. 16-1263, 2016 U.S. App. LEXIS 23966 at *12 (6th Cir. 2016) (noting that the MDOC policy "is unclear as to whether a prisoner must name each defendant in his first grievance or before the conclusion of the grievance process."); *Herman v. Hawkins*, No. 25-10924, 2026 LEXIS 188652 at *8 (E.D. Mich. Feb. 5, 2026) (same).

The MDOC's prisoner grievance policy is an eight-page, 5,280-word document. ECF No. 18-2. It contains only one sentence about naming officials: "Dates, times, places, and names of all those involved in the issue being grieved are to be included." ECF No. 18-2, PageID.47. The context of this sentence suggests that it is a general instruction for how to complete a grievance form, rather than a strict procedural rule justifying rejection. The following sentence, for example, instructs

prisoners not to write in the margins of the form. A preceding sentence instructs prisoners to state the issue "briefly but concisely." The policy also lists fifteen separate procedural bases under which prisoner's grievances can be administratively rejected rather than addressed on their merits, *see* ECF No. 18-2, PageID.45-47, but a prisoner's failure to comply with each instruction in subparagraph Y, such as by writing in the margin of the form, failing state the issue "briefly but concisely," or failing to include the "date," "time," "place," or "names of all those involved" in the subject incident, are not among the enumerated bases for rejection.

Mr. Allen clearly identified Defendants Wickwire, Lemke, and Bagley in his Step III Grievance. As the MDOC grievance policy "does not clearly require prisoners to name all relevant prison officials in the Step I grievance, rather than at some point in the grievance process[,]" *Payne v. Alviar*, 2024 U.S. Dist. LEXIS 54725 at *12 (W.D. Mich. March 27, 2024), a reasonable jury could find that Mr. Allen exhausted the MDOC grievance procedure as to Defendants Wickwire, Lemke, and Bagley.

A reasonable jury could also conclude that Mr. Allen exhausted his available administrative remedies as to Defendants Wyman, Wickwire, Lemke, and Bagley because he did not learn their names before the conclusion of the seven-business-day deadline (*see* ECF No. 18-2, PageID.47, ¶ W) to file a Step I grievance regarding

the incident. Prisoners are not required to identify potential defendants by name in their grievances "when the plaintiff does not know, and cannot reasonably discover, the person's name." *Scott v. Washington*, No. 2:23-cv-13125, 2024 LEXIS 153298 at *4 (E.D. Mich. Aug. 22, 2024).

At the time of the incident giving rise to this claim, C.O. Robert Tinerella was punching Mr. Allen in the face with sufficient force to break Mr. Allen's zygomatic arch. During the beating, Mr. Allen may not have been paying particularly-close attention to which other MDOC employees were present and what those employees were doing. Even if Mr. Allen happened to recognize the faces of some or all the other MDOC staff members who were in the room, he may not have been able to discover their names within the seven-business-day deadline for filing a Step I Grievance.

Defendants Wyman, Lemke, Wickwire, and Bagley have not introduced any evidence that Mr. Allen was aware of both a) their names, and b) that they were the individual MDOC employees who were present during the attack, at the time he filed his Step I grievance. As such, they have not met their burden to prove their affirmative defense of non-exhaustion.

## III. Mr. Allen was not required to plead specific legal theories in his grievances

Defendants Wyman, Lemke, Wickwire, and Bagley additionally argued that the sentence, "This is on All the C.O. that was there And the RUM and counselor" was insufficient to provide fair notice to the MDOC of Mr. Allen's complaint against them, because "the grievance did not explain how these other individuals did anything wrong[.]" (ECF No. 18, PageID.40). On this issue, *Sanders v. Smith*, No. 1:11-CV-892, 2015 U.S. Dist. LEXIS 41275 (W.D. Mich. Mar. 31, 2015), is instructive:

> Plaintiff alleged in his grievance that he was escorted to the shower by Andrews, Finnery and Ganye, that he was assaulted by Ganye and Finnerty, and that Officers D. King, Grandy, and Bronson and Supervisor Sgt. King watched the assault. The Magistrate Judge recognized that Plaintiff's grievance did not specifically identify Andrews as an assaulter or observer, but nevertheless found that the grievance, which specified that Andrews was one of the three escorting officers, "placed Andrews in very close proximity when the alleged assault by Gagne and Finnerty occurred, and described no action taken by defendant Andrews to stop it, was adequate to provide Andrews with notice of the claim being asserted against him.' (R&R 18.)
>
> On de novo review, the Court agrees that the grievance was sufficient to properly exhaust Plaintiff's claim against Defendant Andrews. Although a prisoner is required to allege misconduct on the part of the defendant in his grievance, in keeping with the general practice of liberally construing pro se prisoners' filings, this is not a particularly strict standard. *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (citing *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006)). Because Plaintiff named Andrews in his grievance as one of the officers who escorted him, and because he did not indicate that Andrews left the scene or took any action to stop the assault, a liberal construction of the grievance is sufficient to put Andrews on fair notice of Plaintiff's Eighth Amendment claim against him.

*Sanders v. Smith*, 2015 U.S. Dist. LEXIS 41275 at *3-*4, (W.D. Mich. Mar. 31,

2015). Like the *Sanders* plaintiff, Mr. Allen alleged in his grievances that he was assaulted by a corrections officer on a particular date and in a particular location, that other corrections officers were present, and he "did not indicate that [Wyman, Lemke, Wickwire, or Bagley] left the scene or took any action to stop the assault[.]" This is sufficient to give the MDOC fair notice of Mr. Allen's failure-to-protect claim against the staff members who stood by while C.O. Tinerella attacked him. *Id.* at *4.

**IV. In the alternative, if MDOC's grievance procedure requires Mr. Allen to identify by name individuals whose names he did not know within seven business days of the beating, the grievance procedure was "unavailable" to Mr. Allen**

The MDOC's grievance procedure clearly requires prisoners to file their Step I Grievance within, at most, seven business days of the date that they "becom[e] aware of a grievable issue." ECF No. 18-2, PageID.47. Mr. Allen was clearly aware of a grievable issue as soon as he was punched in the face by an MDOC employee on January 13, 2025. To properly exhaust, Mr. Allen was thus required to file his Step I grievance no later than January 21, 2025.

Assuming, *arguendo*, that Defendants Wyman, Wickwire, Bagley, and Lemke were correct that the MDOC's grievance procedure required Mr. Allen to identify

all of them by name in his Step I grievance, regardless of whether he knew both, a) their names, and b) that they were the individual MDOC employees who were present during the beating, then the grievance procedure was 'unavailable' to Mr. Allen with respect to these Defendants. "Under §1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). "Specifically, an inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Coopwood v. Wayne Cnty.*, 74 F.4th 416, 422 (6th Cir. 2023) (internal quotations omitted).

An administrative remedy that requires prisoners to provide information that they do not have, and cannot reasonably obtain within the deadline to file a grievance, is not capable of use to obtain relief "in practice." *See Copewood*, 74 F.4th at 422. And as the parties seeking summary judgment on an affirmative defense, Defendants Wyman, Wickwire, Bagley, and Lemke bear the burden of proving more than the mere fact that Plaintiff did not properly complete the MDOC grievance procedure. In order to prevail, they are also "require[d]" to proffer "evidence that is 'so powerful that no reasonable jury would be free to disbelieve it' in support of grievance availability." *Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423

(6th Cir. 2023) (quoting *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012)). Defendants Wyman, Wickwire, Bagley, and Lemke have not done so. As these Defendants put forth no evidence that Mr. Allen knew, or could have discovered before January 21, 2025, both a) their names, and b) that they were the staff members present during the attack on January 13, 2025, they are not entitled to summary judgment on their affirmative defense of non-exhaustion, regardless of whether Mr. Allen properly completed the MDOC grievance procedure with respect to the January 13, 2025 incident.

Dated: August 1, 2026

/s/ *Ian T. Cross*
Ian T. Cross (P83367)
Cross Law PLLC
*Attorney for Plaintiff Barton Allen*
402 W Liberty St.
Ann Arbor MI 48103
734-994-9590
ian@lawinannarbor.com

## Certificate of Compliance

I hereby certify that the above brief contains no more than 3,437 words, and thus complies with W.D. Mich. LCivR 7.2(b)(i). The word processing software used to generate the word count is LibreOffice Writer Version 26.2.

Dated: August 1, 2026

/s/ *Ian T. Cross*
Ian T. Cross (P83367)